UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANN M. MONHAUT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 3:09-CV-364 CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On August 11, 2009, Plaintiff, Ann M. Monhaut ("Monhaut"), filed a complaint in this Court seeking judicial review pursuant to 42 U.S.C. § 405(g). On December 23, 2009, Monhaut's opening brief was filed. On April 12, 2010, Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), filed his reply brief. On May 3, 2010, Monhaut filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.  PROCEDURE**

On October 5, 2005, Monhaut filed an application for Disability Insurance Benefits ("DIB"), alleging disability since July 2, 2000 due to chronic pelvic instability and fibromyalgia. Monhaut's application was denied initially and upon reconsideration. On August 27, 2008, Monhaut appeared and testified, with counsel, before an Administrative Law Judge ("ALJ"). On November 21, 2008, the ALJ issued a decision finding Monhaut not disabled due to a lack of medical signs or laboratory findings to substantiate a claim for any severe medically

1

determinable impairments. On June 9, 2009 the Appeals Council denied Monhaut's request for review, leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. § 404.981. On August 11, 2009, Monhaut filed an appeal of the Commissioner's decision in this Court. This Court may enter a ruling in this matter pursuant to 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Monhaut was 41 years old on her date last insured and 44 years old at the time of the ALJ's decision. Monhaut alleges an onset of disability of July 2, 2000. Monhaut's past relevant work included work as an administrative assistant, a teacher and the director of religious education for a Catholic parish.

#### 1. Evidence prior to Monhaut's date last insured of December 31, 2005.

On September 25, 2000, Monhaut consulted with Brad Sandler, D.O., of Corrective Care P.C. for complaints of severe groin, pelvic and lower abdominal pain stemming from a pelvic injury sustained in 1996. Monhaut continued to see Dr. Sandler until May 9, 2002, during which she received, on average, once-a-month prolotherapy injections and underwent extensive physical therapy. An evaluation on February 23, 2001 found that Monhaut was functioning at 40% overall, with 35% weakness in her abdominal muscles. However, another evaluation on June 29, 2001 found Monhaut to be functioning at 85% overall with a 20% weakness in her abdominal muscles.

In June 2002, Monhaut, presenting with complaints of constant pain, underwent an initial examination with chiropractor Steven Obert. Upon examination, Monhaut exhibited pain with straight leg raise testing on the left, and pain and some limitation in lumbar flexion and

extension. Monhaut subsequently saw Steven Obert on a weekly to bi-weekly basis through July 2004, and again on a similar schedule from November 2004 through November 2005.

On July 11, 2002, Monhaut underwent x-rays of her lumbar spine, hips and pelvis. The x-ray of the lumbar spine was normal. However, the x-rays of the hips and pelvis showed sclerosis. A bone scan on July 25, 2002 was normal, but an x-ray and CT scan of her pelvis showed multiple focal areas of bony sclerosis.

On August 6, 2002, Monhaut saw Bruce McClure, D.O., who then became her primary care physician. Dr. McClure assessed Monhaut with fibromyalgia and noted trigger points throughout the body as well as soreness in her right sacroiliac joint.

On November 5, 2004, Monhaut began physical therapy for her fibromyalgia at St. Joseph Rehabilitation Mishawaka after giving birth to her last child. The physical therapist assessed Monhaut with lumbar and pelvic instability due to her frequent pregnancies and history of fibromyalgia. Monhaut was initially using a walker, as she walked with great difficulty; but she improved with the therapy and, by January 2005, primarily used a cane and began the transition to an at-home exercise program.

In December 2005, Monhaut consulted with Dr. Ralph Inabnit. Upon examination, Dr. Inabnit found that Monhaut's range of motion was normal. Her grip strength was 4/5, cranial nerves were normal and motor strength was 4/5 in all extremities. Monhaut's tone was normal, her gait was normal and she had no abnormal movements. Monhaut's sensation was intact, tandem toe and heel was normal, her gait was normal and she could walk without the use of a cane. In addition, her reflexes were symmetrical and normal. Dr. Inabnit noted that there was evidence of fribromyalgia, arthralgias (joint pain), myalgias (muscle pain), and asthma.

2. <u>Evidence after Monhaut's date last insured of December 31, 2005</u>

During a psychological evaluation by Gary Elliot, Ph.D. in March 2006, Dr. Elliot observed that Monhaut was alert and attentive, slow to rise from a chair, had a slow gait, used a cane and favored her right leg. Monhaut reported to Dr. Elliot that she cooked, cleaned, did laundry, shopped and was able to drive but often chose not to.

In September 2006, Monhaut saw rheumatologist Alan Birnbaum, M.D. He assessed bilateral C2 and trapezius trigger points as well as 8 lumbar trigger points. Dr. Birnbaum assessed fibromyalgia and suggested Monhaut return to physical therapy. In October 2006, Dr. Birnbaum conducted a physical examination and noted it was essentially stable. However, Monhaut was still having some problems, so Dr. Birnbaum referred her to physical therapist Tammi Taylor.

In September 2007, Dr. McClure noted that Monhaut was doing exceedingly well with her physical therapy. On March 3, 2008, Monhaut's physical therapist, Ms. Taylor, completed a form where she indicated that Monhaut could occasionally lift up to 10 pounds, but could not carry any weight; could occasionally reach above shoulder level, and handle and engage in fingering; could not stoop, squat, climb stairs, kneel, or crouch; could not work at unprotected heights, around moving machinery, or be exposed to marked changes in temperature or humidity; and was not capable of working. A March 14, 2008 form completed by Dr. McClure stated the same findings. Dr. McClure noted that Monhaut struggled to walk, sit, and stand due to fibromyalgia, lumbar radiculopathy, and neuralgia and was unable to perform activities of daily living for any length of time due to pain. In addition, Dr. McClure noted that out of an eight-hour day, Monhaut could sit for two hours, stand an hour, and walk one hour. Dr.

Birnbaum concluded with the findings in each form on March 19, 2008; however, Dr. Birnbaum felt that Monhaut could work part-time, 4-6 hours per day, but that she would likely have to lie down periodically during the day to relieve pain.

3. Monhaut's testimony before the ALJ

Monhaut testified that she had constant pain, that her medications made her drowsy, and shaky/dizzy. Monhaut also claimed that she napped 2-4 hours per day. In addition, Monhaut stated that she received a lot of help with daily living activities.

4. The ALJ's decision

The ALJ reviewed the evidence of record, including Monhaut's treatment records, the consultative examinations and evaluations in the record, and Monhaut's testimony. To decide whether she was disabled, the ALJ applied the sequential evaluation process prescribed by regulation. 20 C.F.R. § 404.1520(a)(4). See White v. Barnhart, 415 F.3d 654, 657 (7th Cir. 2005). Based on his review of the evidence, the ALJ found, at step two, the record did not substantiate a severe medically determinable impairment prior to her date last insured of December 31, 2005, 20 C.F.R. § 404.1520(a)(4)(ii). Accordingly, the ALJ concluded that Monhaut was not disabled.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g). See also Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales,

402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

C.　Monhaut's motion for summary judgment or remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321(a), Monhaut must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). Monhaut must establish that her disability began during the relevant period before her insured status expired on December 31, 2005. See Stevenson v. Chater, 105 F.3d 1151, 1154 (7th Cir. 1997). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any

step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Monhaut asserts that the ALJ wrongly concluded that there were no medical signs or laboratory findings to substantiate the existence of a severe medically determinable impairment. Therefore, Monhaut asserts that a denial at step two was clearly in error and seeks a remand so that a full evaluation may be given to the entirety of her case, including a proper evaluation of the evidence under steps three, four, and five of the sequential evaluation process.

1. <u>The ALJ's conclusion that Monhaut had no severe impairments is not supported by substantial evidence in the record.</u>

Monhaut contends that the ALJ erred when making a denial at step two of the sequential evaluation process. At step two, the ALJ must determine whether the claimant has shown a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521(a) (basic work activities include physical activities such as sitting, standing, and lifting and mental activities such as understanding and carrying out simple

instructions); 20 C.F.R. § 404.1521(b). An impairment is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. See Lopez-Navarro v. Barnhart, 207 F. Supp. 2d 870, 881 (E.D. Wis. 2002); Dunn v. Sullivan, 1993 WL 730745 at 4 (N. D. Ill.1993); S. S. R. 85-28.

A determination of "severe" under step two is evaluated using a *di minimis* standard. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 158 (1987) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis"); Samuel v. Barnhart, 295 F. Supp. 2d 926, 952 (E.D. Wis. 2003) ("the step two requirement that the claimant have a severe impairment is generally considered to be 'a di minimis screening device to dispose of groundless claims'"); Lopez-Navarro, 207 F. Supp. 2d at 881; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

This Court concludes that the ALJ's determination that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured" is counter-intuitive to the ALJ's discussion of the evidence and is, therefore, not substantially supported. See Tr. at 18.

Despite claiming that there was no medical evidence of a medical impairment, the ALJ began his step 2 analysis with a lengthy discussion of Monhaut's extensive diagnostic testing, which included multiple x-rays, MRIs, and CT scans. The ALJ also discussed the numerous doctors that Monhaut visited during the period of disability. In particular, the ALJ referenced medical visits and treatments performed by Dr. Birnbaum, Dr. Inabnit, neurologist Paula Russel, neurologist J.B. Schnittker, Dr. Obert, Dr. Harris, Dr. McClure, and psychologist Gary Elliot. In

8

addition, the ALJ noted evidence of a brain lesion that showed up on MRI and CT scans in 2003 and 2007. Further, the ALJ discussed Dr. Obert conclusion that Monhaut was functioning at eighty-five percent normal following treatment, which included exercise therapy and injections for back pain and pelvic instability; and the ALJ discussed a 2002 and 2003 finding by Dr. McClure that Monhaut was better with physical therapy, provided Monhaut did not over do it. Finally, the ALJ discussed Dr. McClure's advice to Monhaut to pace herself and Dr. McClure's prescribed treatment of medication in 2005.

Even after this lengthy discussion of the evidence of Monhaut's extensive medical testing and treatment, the ALJ confusingly concludes that there is *no* medical evidence to support a medically determinable impairment. Such a conclusion is neither logical nor consistent with the record evidence. In addition, this Court notes that the standard for determining a severe impairment is a *di minimis* one, requiring only that an impairment be such that it could cause some interference with an individual's basic work activities. Given the extensive medical evidence in the record, it seems strange to this Court that the ALJ also found that Monhaut had no severe impairments. Recognizing the unique fact-finding responsibilities of the ALJ, this Court does not suggest a particular result on remand. However, this Court concludes that, on remand, the ALJ must more thoroughly articulate his analysis in order to explain and defend his conclusion that the record evidence is insufficient to support a finding of either a medically determinable impairment or a severe impairments, especially considering the *di minimis* standard at step 2.

Further, this Court additionally notes that the ALJ failed to mention or discuss Monhaut's symptoms and diagnosis of fibromyalgia. Fibromyalgia has been recognized by courts as a

9

potentially totally disabling condition. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . ."). Fibromyalgia has unknown causes and is characterized by "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender spots. Id. at 306. Monhaut was diagnosed with fibromyalgia on multiple occasions by multiple doctors. On remand, in order for the ALJ's step 2 conclusion to be substantially supported, the ALJ must conduct a more thorough evaluation and discussion of this evidence as well.

### III. CONCLUSION

The ALJ's determination that Monhaut did not suffer from any severe impairments is not supported by the evidence in the record and is insufficiently articulated. As a result, this Court **GRANTS** Monhaut's motion for remand. [Doc. No. 1].

**SO ORDERED**

Dated this 17th Day of June, 2010.

                                            S/Christopher A. Nuechterlein
                                            Christopher A. Nuechterlein
                                            United States Magistrate Judge